Up. Yes, that's right. All right. We reordered it. I'm sure I got it right. Mr. Joseph, please proceed when you're ready. May it please the Court. The government characterizes this case as a mere factual disagreement, that what the trial court did was make factual determinations, and that here on appeal Transatlantic is simply arguing a different interpretation of the facts in the record. The facts material to our claim are not only not disputed but are incontrovertible. The solicitation, as a minimum requirement, said that frequency service shall be no less frequent than every 14 days from each port. The successful offeror Skyler submitted a proposal, and in this proposal it said we will perform this contract using two vessels, not one or the other, but both interchangeably. Did it say interchangeably? I didn't see that. Well, it didn't use the word interchangeable, but it said we will use both vessels. And it submitted schedules for each vessel, a schedule for the spar, its self-propelled vessel, and a schedule using its words when the barge is used. So it's clear that they intended to use the barge. Weren't they going to use a barge when the spar was not, let's say, functional or available? In other words, it was a backup that they had. They simply said it will be our alternative or backup vessel. But there was no restriction or any limitation as to when it could switch vessels, when it would become the backup vessel, when the primary vessel was, to use the agency's words, when the primary vessel was unavailable. But the solicitation itself says that any offeror would have to provide 45 days of advanced notice of any proposed schedule change. So why isn't it reasonable for the government to expect that if, for some reason, they were going to propose, like if the spar was going to have to be taken out of commission to be worked on, as happens periodically with these ships, they would have to give the government 45 days advance notice of their intention to substitute in the Columbia for the spar? That would be true in any case. Our proposal included only one vessel, and everyone recognizes that the nature of vessels and sea transportation is such that there will be times when a vessel is unavailable. Vessels need to be taken out of service. The notice requirement is a normal and reasonable requirement that takes place during the performance of the contract. But the fact that that requirement exists in no way can be used to excuse a failure to comply. But there's only a failure to comply if we interpret the proposal as you suggest, which is that they intend to use these two ships interchangeably. And that's not what the claims court found, and I have to give clear error deference to them. And it seems as though there's some evidence in the proposal that the Columbia was intended to be a backup. And so in light of all that evidence, I don't see how you can leap over the clear error hurdle. Well, use of the term backup, first of all, the claims court never found, it certainly repeated the language of the proposal that it would be used as a backup vessel, but it meant it would only be used in cases of emergency or unanticipated delay. The agency recognized that the offeror, in fact, used the spar for other business. And I simply don't see that the use of the term backup or alternative in any way justifies a finding as to how frequently they will substitute the barge for the self-propelled vessel. I'm sorry, go ahead. Go ahead, Judge. If the Schuyler solicitation had represented that they would only use the spar, with no reference at all to the barge, then there wouldn't have been a problem, I take it? We would not be here. Right. So they add in, they say, well, we have this additional boat, presumably which they can use from time to time, and that, you say, makes the solicitation noncompliant. Well, not the mere fact that they add an additional vessel, but the fact that the schedule for the additional vessel demonstrates that when they do substitute the additional vessel for the spar, they will not, not may not, but will not be able to satisfy the 14-day departure frequency requirement. That vessel on its next voyage will depart Gitmo 16 days after the last departure, rather than 14 days. So what happens to, when your vessel is out of commission? When our vessel is out of commission, we, assuming we know it's going to be out of commission, we give the government notice, we charter in or use another vessel that we own to perform the contract on a timely basis. Common practice in the industry. How is that different, other than the fact that Schaller declared this in their response? Well, it's different because their proposal says, when we do this, we will not comply. Now, in the performance of this contract by any contractor, there may be instances in which they will not comply, but the question here is whether the proposal satisfied the requirements of the solicitation, not whether the performance satisfied the requirements of the contract. And that's the whole case, is did the solicitation satisfy, rather, did the proposal satisfy the requirements of the solicitation? And on its face, it clearly did not. The solicitation spoke to a schedule, not number of shifts, is that correct? Yes. So how is the response then, the proposal, where it says we're going to utilize two shifts and use one as a backup, how does that implicate the schedule, other than the fact that when they use a backup, it's going to be a 16-day transit? Well, I'm not sure I understand the question, Your Honor, but there's no limitation in the solicitation that would prohibit an offeror from offering to perform with two vessels, and the solicitation required that the offeror submit schedule or schedules that demonstrated it would comply with the 14-day requirement. So Schuyler submitted a proposal using two vessels, it submitted two schedules as required, and the schedules themselves demonstrated that when they make the switch, substitute the barge for the self-propelled vessel, they will not meet the 14-day requirement. That seems to me to be a classic case of a proposal on its face showing that it will not satisfy the requirements of the solicitation. The court and the government both referred to the fact that these were called just sample schedules and they shouldn't be taken so seriously, but the schedules that were required were really the only basis that the government had to evaluate whether an offeror would satisfy the frequency of service requirement. We've already addressed the notice requirement, which we believe has to do with performance, not with solicitation and offer, and the government also refers to cases suggesting the court will give deference when the question addressed by the lower court or the agency involves technical expertise or a technical matter. But in this case, the frequency of service requirement requires, whether it complies with that requirement, requires only a knowledge of whether 16 days is greater than 14 days. Unless the court has further questions, I'll reserve the balance of my time. Okay, Mr. Joseph, thank you. Mr. Major, am I saying it right? Yes, you are. May it please the court, 14 days is 14 days. The only way that we get to a 16-day schedule using two 14-day schedules is if we break apart the schedules contrary to what's found in the proposals. Taking a second to look at that, it takes one of the vessels to barge seven days approximately to go out to Guantanamo Bay, a five-day journey back. It ultimately meets the requirements of the solicitation. The other vessel takes four to go out to Guantanamo Bay and approximately 11 days or so to go back. As a result, the way you get to 16 days is by swapping the vessels out at Guantanamo Bay. It presumes the barge will go out from Jacksonville to Guantanamo Bay and that the spar, the other vessel, will be taking the return trip from Guantanamo Bay to Jacksonville. The problem with that is the schedules represent that the vessels are going to be traveling from Jacksonville to Guantanamo Bay and back. You have to break the schedules up and change effectively what the original port of embarkation is to get to 16 days. It was entirely rational and reasonable for the agency not to do that and for them to treat the backup vessel as just that. Moreover, the government does have protection because there is a 45-day notice requirement within the solicitation that provides for the entry of vehicle schedules in advance. This is for a number of scheduling purposes, but it allows the government at all times to make certain that vehicles are complying with the 14-day requirement. Is a 14-day transit time, is that an estimate or it seems to me that it would more often be the case that perhaps these ships can do this in 13 days or 15. My experience being out on the water is, you know, things happen out there. Well, I mean, there's a 14-day requirement. It's part of the performance work statement. It is part of the contract. In theory, if an offeror is not routinely doing departures every 14 days from Jacksonville, the government could terminate the contract for default. So there is a 14-day requirement. I mean, there are several elements of that. They, you know, provide that, you know, the trip from Jacksonville to Guantanamo Bay should take a maximum of seven days. The trip back should take a maximum of 18 days. And there are weather allowances, you know, if there's slippage that occurs due to weather conditions, the government makes allowances for that. In any government contract, there are ways that if something occurs that's unforeseen that ultimately you can otherwise deal with those situations in a government contract and not worry about ultimately being terminated for default in a case like that. But the 14-day requirement is clearly part of the performance work statement and we do not disagree with either Transatlantic or the court that it was a material requirement of this contract. So what, you know, we would note is that there wasn't a requirement. So if it's material and in your proposal you identified, you actually proposed that there's going to be times that I'm going to do this in 16 days, then you're not meeting the specification, are you? Yeah, well, OFRA had to demonstrate their ability to provide the equipment and resources necessary to successfully accomplish and meet the requirements of solicitation. If you're proposing 16 days, you know, just on its face, no, you aren't meeting the requirements at all of the solicitation. You're, in fact, demonstrating a misunderstanding. In those cases, the government might enter into discussions with an OFRA and say, look, it says 14 days. You said 16. Do you understand that we need 14 days? It could go back. There were discussions in this case. But in this case, those discussions didn't focus on the schedule because the government did view it as acceptable from the outset. So unless the court has any questions. No. Thank you, Mr. Major. Thank you, Your Honor. Mr. Joseph, you have some rebuttal time. I would only add that while there were separate schedules and counsel talked about some breaking up of schedules, I want to make clear that it is undisputed that when the barge is substituted for the self-propelled vessel, it will, whenever it reaches Guantanamo, it will depart 16 days after the last departure. And I don't know what counsel meant by breaking up the schedules or whether TRANSCOM viewed the schedules in a strange way. The fact is, as recognized by the trial court, TRANSCOM never even recognized this problem when one vessel is substituted for the other. It simply analyzed the schedule separately. And we agree that each schedule, when viewed separately, shows that departures will be every 14 days. It's only when the barge is substituted for the spar that the 16-day problem will arise. And therefore, Schuyler's own schedules demonstrate that when this happens, the interval will be 16 days. I don't believe the frequency with which it might happen is at all determinative of this issue. Schuyler represented that it would happen. And one can attribute various meanings to the words primary and backup. But it would happen, and when it happens, it will be 16 days. And that demonstrated that the proposal did not comply with the solicitation. Okay, thank you, Mr. Joseph. I thank both counsel for their arguments. The case is taken under submission.